WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kimberly Lynn Schwab, | No. CV-15-01081-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W Colvin, | |
| Defendant. | |

Pending before the Court is Plaintiff Kimberly Lynn Schwab's appeal from the Social Security Commissioner (the "Commissioner")'s denial of her application for a period of disability, disability insurance payments, and supplemental security income. (Doc. 1). Plaintiff argues that the Administrative Law Judge ("ALJ") erred in finding that Plaintiff was not a credible witness, and by failing to properly weigh the medical evidence that was before her. (Doc. 11). The Court now rules on Plaintiff's appeal.

## I.     Background

Plaintiff was born in June of 1977, and holds at least a high school education. (Doc. 10-3 at 39). In May of 2010, Plaintiff injured her lower back at work while attempting to lift a table, (*id.* at 31), and was subject to coverage by workers compensation. (*Id.* at 51). By July 2010, Plaintiff "returned to full-time work in a sedentary supervisory position," (*id.* at 37), and was working with the Childrens' Center, but "had difficulty maintaining that work." (*Id.* at 52). By mid-2011, her symptoms had

worsened, (*id.*), and Plaintiff has not engaged in substantial gainful activity—including employment—since May 17, 2011. (*Id.* at 28).

Plaintiff met numerous times with Jeffrey Scott, M.D., the "physician assigned to [Plaintiff] through her worker's compensation claim." (Doc. 10-3 at 36). Dr. Scott opined "on multiple occasions that [Plaintiff] is unable to sustain full time employment on a regular and continuous basis," and that she would require numerous work-related restrictions. (*Id.*). Following an MRI in July 2011, and in light of Plaintiff's unimproved status, Dr. Scott echoed an earlier medical recommendation from another doctor that Plaintiff turn to surgery to treat her lower back. (Tr. 610).[1] In October 2011, Plaintiff underwent "percutaneous transforaminal endoscopic discectomy with closure of the annular tear at L4-5 and L5-S1," (Doc. 10-3 at 28), and was unable to work until at least December 2011. (*Id.* at 36). Plaintiff's condition did not improve post-surgery, however, and Dr. Scott recommended epidural injections coupled with opioid treatment for the pain. (Tr. at 600, 602).

In January 2012, Plaintiff met with Mark Binette, M.D., for a "consultative examination at the request of the State agency."[2] (Doc. 10-3 at 34). Dr. Binette diagnosed back pain, and "opined [that] there were no conditions that would impose any limitations for 12 continuous months." (*Id.*). Plaintiff thereafter met with Monte Jones, M.D., in September 2012, who diagnosed Plaintiff with back pain, a history of lumbar spine surgery, and depression. (*Id.*). The record indicates that Plaintiff continued to meet with medical professionals due to her lower back injury, including Barton W. Butterbaugh, M.D., for symptoms of insomnia and continued back pain, as well as the Desert Institute for Spinal Care. (Tr. 552-53, 575-580, 666-670).

Plaintiff also underwent a psychological evaluation in October 2012, when she

---

[1] Citations to "Tr." are to the certified administrative transcript of record. (Doc. 10).

[2] The ALJ's decision does not appear to clearly articulate which "State agency" requested the examination.

met with Alexander Piatka, Ph.D. (Doc. 10-3 at 34). Dr. Piatka diagnosed Plaintiff with "depressive disorder" and opined that Plaintiff's "symptoms appeared moderate in severity." (*Id.*). Plaintiff's psychological treatment continued in July 2013 when she met with Shannon Tromp, Ph.D., for evaluation. (*Id.* at 35). Plaintiff was subjected to a "mini mental status exam" and "scored 30 out of 30." (*Id.*). Dr. Tromp opined that Plaintiff would have difficulty with "sustained concentration due to pain" and "would miss more than [three] days per month as a result of her pain and pain disorder," but noted "no specific work limitations." (*Id.*). Nurse practitioner Judith Hahn "submitted a statement" in regards to Plaintiff's psychological condition, and opined that Plaintiff suffered from "mild to moderate limitations of functioning," as Plaintiff struggled with "simple decision making," "anxiety," and "difficulty in social settings," but could return to a "low-stress" job and would likely miss "2-3 days of work per month." (*Id.* at 37-38). Ultimately, Plaintiff was diagnosed with the "severe impairments" of "depressive disorder," "anxiety disorder," and "opiate dependency." (*Id.* at 28). Licensed counselor Gabriella Montgomery also submitted an opinion as to Plaintiff's mental well-being, opining that there were "marked limitations" to Plaintiff's cognitive and social abilities, such as concentration, punctuality, maintaining regular attendance, and maintaining an uninterrupted work schedule. (*Id.* at 38).

Plaintiff testified that she is still in pain throughout the day, ranging from mild to severe, and that she still has difficulty walking, sitting, and standing. (Tr. 57, 63). As of April 2013, Plaintiff was living with a family friend, and tries to spend time outside of the house at least once a week. (*Id.* at 63).

On September 26, 2011, Plaintiff filed an application for a period of disability and disability insurance benefits. (Doc. 10-3 at 26). Plaintiff thereafter sought supplemental security income on November 1, 2011. (*Id.*). Plaintiff's claims were initially denied on February 7, 2012. (*Id.*). Plaintiff timely requested a hearing, which was conducted by ALJ Patricia A. Bucci on April 4, 2013, and a supplemental hearing was held on August 9, 2013, in Phoenix, Arizona. (*Id.*). On September 3, 2013, the ALJ issued an unfavorable

decision, and affirmed the decision upon reconsideration on October 17, 2012. (*Id.*). After Plaintiff's request for review by the Social Security Administration Appeals Council was denied on April 14, 2015, she commenced this action in federal court on June 12, 2015. (Doc. 1).

## II.   Legal Standard

The ALJ's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (quotation omitted). "Substantial evidence" means more than a mere scintilla, but less than a preponderance. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). In determining whether there is substantial evidence to support a decision, the Court considers the record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the ALJ's conclusions. *Reddick*, 157 F.3d at 720. "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant*, 753 F.2d at 1453 (citations omitted); *see Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports

the Commissioner's decision, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

Notably, the Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. Rather, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). On appeal, "issues which are not specifically and distinctly argued and raised in a party's opening brief are waived." *Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (citing *Barnett v. U.S. Air., Inc.*, 228 F.3d 1105, 1110 n.1 (9th Cir. 2000) (en banc)); *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009) (applying the principle to an appeal from a denial of benefits by the Social Security Commissioner). The Ninth Circuit's reasoning is that courts "will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim." *Id.* (citation omitted).

## A.    Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show that, among other things, she is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A person is "under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

1

2     **B.      The Five-Step Evaluation Process**

3            To evaluate a claim of disability, the Social Security regulations set forth a five-

4     step sequential process. 20 C.F.R. § 404.1520(a)(4); *see also Reddick*, 157 F.3d at 721. A

5     finding of "not disabled" at any step in the sequential process will end the inquiry. 20

6     C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps,

7     but the burden shifts to the Commissioner at the final step. *Reddick*, 157 F.3d at 721. The

8     five steps are as follows:

9            1. First, the ALJ determines whether the claimant is "doing substantial gainful

10    activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

11           2. If the claimant is not gainfully employed, the ALJ next determines whether the

12    claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R.

13    § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[]

14    [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §

15    404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," such

16    as lifting, carrying, reaching, understanding, carrying out and remembering simple

17    instructions, responding appropriately to co-workers, and dealing with changes in routine.

18    20 C.F.R. § 404.1521(b). Further, the impairment must either have lasted for "a

19    continuous period of at least twelve months," be expected to last for such a period, or be

20    expected "to result in death." 20 C.F.R. § 404.1509 (incorporated by reference in 20

21    C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a *de minimis* screening device to

22    dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If

23    the claimant does not have a severe impairment, then the claimant is not disabled.

24           3. Having found a severe impairment, the ALJ next determines whether the

25    impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R.

26    § 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not,

27    before proceeding to the next step, the ALJ will make a finding regarding the claimant's

28    "residual functional capacity based on all the relevant medical and other evidence in [the]

case record." 20 C.F.R. § 404.1520(e). A claimant's "residual functional capacity" ("RFC") is the most he can still do despite all his impairments, including those that are not severe, and any related symptoms. 20 C.F.R. § 404.1545(a)(1).

4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can still perform the kind of work he previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5. At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and his "age, education, and work experience." 20 C.F.R. § 404.1520(g)(1). If the claimant can perform other work, he is not disabled. If the claimant cannot perform other work, he will be found disabled.

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. *See* 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 404.1520b. This includes medical opinions, records, self-reported symptoms, and third-party reporting. *See* 20 C.F.R. § 404.1527; 20 C.F.R. § 404.1529; SSR 06–3p, 71 Fed. Reg. 45593-03.

## C. The ALJ's Evaluation Under the Five-Step Process

The ALJ found that Plaintiff had not engaged in substantial gainful activity since May 17, 2011, and that she possessed a number of severe impairments,[3] satisfying the first and second steps of the inquiry. (Doc. 10-3 at 28-29). At step three, the ALJ found

---

[3] The ALJ explained that Plaintiff had the following medically determinable impairments: "lumbar degenerative disc disease with annular tear, status post discectomy; depressive disorder; anxiety disorder; and opiate dependency." (Doc. 10-3 at 28).

1   that Plaintiff's impairment or combination of impairments did not meet or medically

2   equal any of the listed impairments in the Social Security regulations that automatically

3   result in a finding of disability. (*Id.*).

4        Prior to moving on to step four, the ALJ conducted an RFC determination in light

5   of proffered testimony and objective medical evidence. (Doc. 10-3 at 30-39). The ALJ

6   found that Plaintiff "has the residual capacity to perform light work as defined in 20

7   C.F.R. 404.1567(b) and 416.967(b) except [Plaintiff] should never climb ladders, ropes,

8   and scaffolds," and she "should avoid concentrated exposure to dangerous [items] with

9   moving mechanical parts and unprotected heights." (*Id.* at 30). The ALJ further found

10  that Plaintiff "retains the ability to perform unskilled to semi-skilled tasks with only

11  occasional interaction with the public, co-workers, and supervisors." (*Id.*). At step four,

12  the ALJ found that Plaintiff was "unable to perform past relevant work." (*Id.* at 39).

13       Finally, the ALJ determined at step five that based on Plaintiff's age, education,

14  work experience, and RFC, Plaintiff could perform significant numbers of jobs existing

15  in the national economy. (Doc. 10-3 at 39.). Consequently, the ALJ found that Plaintiff

16  was not disabled under the Social Security Act.

17

18                              **III.   Analysis**

19       Plaintiff makes two arguments in support of her contention that the Court should

20  set aside the ALJ's decision. Specifically, Plaintiff asserts that the ALJ erred in (1)

21  finding that Plaintiff was not entirely credible as a witness, and (2) by improperly

22  weighing certain medical evidence. The Court will address each in turn.

23

24  **A.   Whether the ALJ Properly Discredited Plaintiff's Testimony**

25       The Court first addresses Plaintiff's argument that the ALJ erred when she found

26  that Plaintiff's testimony as to the "intensity, persistence and limiting effects" of her

27  injury was "not entirely credible." (Doc. 10-3 at 31).

28

### 1. Legal Standard

An ALJ must engage in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 749–750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain her credibility evaluation. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen*, 80 F.3d at 1283–84); *Lingenfelter*, 504 F.3d at 1036.

In rendering a credibility determination the ALJ may consider several factors, including "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*. 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284). If the ALJ relies on these factors and her reliance is supported by substantial evidence, the Court "'may not engage in second-guessing.'" *Id.* (quoting *Thomas v. Bardnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

### 2. Analysis

In this case, the ALJ found that Plaintiff's "medically determinable impairments

could reasonably be expected to cause the alleged symptoms" that she suffered from, (Doc. 10-3 at 31), thus satisfying the first step of the credibility analysis. The ALJ also made no finding "of malingering based on affirmative evidence." *Robbins*, 466 F.3d at 883 (citation omitted). The ALJ's decision to find Plaintiff's testimony "not entirely credible" must therefore be supported by "clear and convincing reasons to explain her credibility evaluation." *Id.*

Plaintiff argues that the ALJ's determination lacks this evidentiary support, specifically taking exception to the ALJ's consideration of Plaintiff's ability to engage in some activities of daily living, the fact that Plaintiff was not in "acute" distress at all of her medical visits, and generally asserting that the ALJ's finding is not supported by the record.

### a.       Plaintiff's Ability to Engage in Daily Activities

One factor that the ALJ relied on in assessing Plaintiff's credibility as a witness was her ability to engage in daily activities. The ALJ explained that Plaintiff was "not limited to the extent" expected in light of her "complaints of disabling symptoms and limitations." (Doc. 10-3 at 33).

The Ninth Circuit has long held it appropriate to consider a claimant's engagement in daily activities as a factor in assessing witness credibility. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). While a claimant need not "vegetate in a dark room" in order to be eligible for benefits, *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (quotation omitted), "the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *Molina*, 674 F.3d at 1113 (citing *Morgan v. Commissioner of the SSA.*, 169 F.3d 595, 600 (9th Cir. 1999)). Moreover, even if the daily activities undertaken by the claimant "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir.

2010)).

Here, the ALJ found that Plaintiff's allegations of disabling physical and mental impairments were undermined by her ability to (1) care for her own personal hygiene with "minimal adaptation," (2) care for her two dogs, (3) prepare simple meals, (4) do laundry, (5) perform light household chores, (6) drive a vehicle, (7) shop on the computer, (8) sew, (9) socialize with her roommate, (10) follow instructions well, (11) get along with others, and (12) enjoy the hobbies of reading, writing and watching movies. (Doc. 10-3 at 33-34). In addition to these daily activities, the ALJ explained that Plaintiff was able to "help[] a friend and spend[] approximately three days per week at her uncle's house with his three children," Plaintiff was able "to move residences entirely by herself without help from friends and or family," she attended job interviews, and she "exercised by yoga, hiking, walking, light weights, and stretching." (*Id.* at 34). These activities led the ALJ to find that Plaintiff possessed the "physical and mental capabilities requisite to perform[] many of the tasks" necessary to hold employment.

The Court finds that while certain of these activities, such as reading, writing, and watching movies may not be "transferable to a work setting," many other activities, such as hiking, yoga, light strength training, care for animals, utilizing a vehicle, moving residences, and interviewing for jobs strongly suggest that Plaintiff has the ability to function physically and mentally in performing "light work" with certain restrictions. (Doc. 10-3 at 30). Plaintiff contends that the aforementioned activities are "so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace." (Doc. 11 at 25). The Court finds this unsupported argument unpersuasive. The ALJ's interpretation of the record is reasonable and supported by substantial evidence, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), *see also Matthews v. Shalala*, 10 F.3d 678, 679–80 (9th Cir. 1993) (upholding ALJ's rejection of claimant's subjective complaints where ALJ found that claimant's performance of daily activities like housecleaning, light gardening, and shopping undermined claimant's assertion of disabling pain), and the Court may not second-guess it.

1

2                          **b.      Inconsistencies in the Record**

3          The ALJ, at two separate points in her decision, found that Plaintiff's credibility

4  was diminished due to contradictions and inconsistencies between her allegations and the

5  record. Initially, the ALJ explained that "[t]he objective findings, diagnostic studies,

6  treatment modalities, and treatment record on the whole illustrate the claimant's

7  limitations are not debilitating," in contrast to Plaintiff's allegations. (Doc. 10-3 at 31).

8  The ALJ, later in her decision, also explained that Plaintiff's "credibility ha[d] been

9  greatly diminished due to inconsistencies observed in the record." (Doc. 10-3 at 33). The

10  Ninth Circuit has consistently held that "[c]ontradiction with the medical record is a

11  sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r,*

12  *SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434

13  (9th Cir. 1995)).

14          Plaintiff's claim of error rests on her argument that the ALJ's decision lacks

15  support from substantial evidence, and that the ALJ failed to explain how [Plaintiff's]

16  extensive treatment history, the objective testing, and the clinical abnormalities contradict

17  a finding of disability." (Doc. 11 at 24). But the ALJ cited to a number of specific

18  examples located in the record. For example, the ALJ noted that Plaintiff admitted to

19  having difficulty sleeping since she was a teenager, that she denied having an inability to

20  concentrate to her treating physician, and that she maintained adequate concentration in

21  "formal mental health testing." (Doc. 10-3 at 33). Moreover, Plaintiff achieved a perfect

22  score on the "mini mental status examination" administered by Dr. Tromp. Dr. Jones

23  found after examination that Plaintiff's spinal range of motion was within normal limits.

24  Plaintiff also continued to take psychotropic drugs, but denied that she was depressed or

25  that she had trouble concentrating to her treating physicians, and merely complained

26  about suffering "occasional bouts of forgetfulness." (*Id.*)

27           Furthermore, the ALJ explained that the "low level of . . . medical treatment"

28  pursued was inconsistent with the level of severity Plaintiff alleged, along with

- 12 -

inconsistencies between Plaintiff's own statements, as well as inconsistencies between her allegations and "negative findings in the medical evidence." (Doc. 10-3 at 32-33). Finally, the ALJ cited to specific medical evidence in the record and found "no evidence of any nerve root impingement, severe stenosis, progressive neurologic deficits, infections, tumors, or fractures to cause the severity of pain and limitations alleged." (Doc. 10-3 at 31).

While there may be more than one interpretation of the medical evidence, the ALJ's interpretation is reasonable, and supported by substantial evidence. The Court may reverse only in the event of harmful error, and "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina*, 674 F.3d at 1111 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). Plaintiff's argument that the Court re-weigh the evidence the ALJ cited to is insufficient to establish harmful error, and the Court "must uphold the ALJ's findings" as they are "supported by inferences reasonably drawn from the record." *Id.* (citing *Tommasetti*, 533 F.3d at 1038); *Rollins*, 261 F.3d at 857.

### c.    Plaintiff's Treatment Regimen

The Ninth Circuit has noted a number of times that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). Here, the ALJ explained that Plaintiff's "[t]reatment was relatively conservative following surgery," and consisted of prescription medication and epidural injections. (Doc. 10-3 at 32). The ALJ went on to explain that Plaintiff "did not participate in physical therapy, receive chiropractic care, or seek emergency medical attention following the lumbar surgery," all of which undermined Plaintiff's "allegations of disabling pain." (*Id.*). Plaintiff does not challenge the ALJ's finding with respect to the treatment pursued, beyond her general argument that the ALJ's decision not to credit her testimony is not supported by the evidence of record.

(Doc. 11 at 24). Having reviewed the decision and the record, the Court finds that the ALJ's explanation is supported by substantial evidence, and entitled to deference.

### d.    Misc. Credibility Factors Relied Upon

The ALJ's decision indicates that she relied on several other factors in making her credibility determination. The ALJ took into account Plaintiff's "generally unpersuasive appearance and demeanor while testifying at the hearing." (Doc. 10-3 at 38). Relying on "ordinary techniques of credibility evaluation"—such as observing the testifying witness's appearance and demeanor—is permissible. *Tommasetti*, 533 F.3d at 1039 (citation omitted). Plaintiff does not challenge the ALJ's reliance on this factor, and the Court will not "engage in second guessing" where the ALJ had the opportunity to view Plaintiff's testimony in-person. *Id.* (citation omitted); *see also Thomas*, 278 F.3d at 960 (upholding the ALJ's reliance on the plaintiff's "demeanor at the hearing" in support of a finding that the plaintiff "seemed to engage in considerable histrionic exaggeration").

The ALJ also explained that Plaintiff's credibility was "further eroded due to the sporadic mental health treatment sought." (Doc. 10-3 at 32). The ALJ noted that despite being prescribed a "heavy dose of medication" following an argument and separation from her significant other, Plaintiff "stopped attending counseling . . . for financial reasons," but "still took psychotropic medications" and "denied depression or difficulty concentrating to treating physicians" in "direct contrast to her allegations" claiming disability. (*Id.* at 33). This finding may be either characterized as "evidence of conservative treatment," or "inadequately explained[] failure to seek treatment." *Bunnell*, 947 F.2d at 346. The Court finds it to be evidence of an "inadequately explained[] failure to seek treatment," which is a relevant factor in assessing credibility of a claimant's testimony. *Bunnell*, 947 F.2d at 346; *see Meanal v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (noting that an ALJ may consider claimant's failure to follow treatment advice as a factor in assessing claimant's credibility). Similarly, the Social Security Rulings ("SSR") express that an "individual's statements may be less credible if the level or frequency of

treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p, 1996 WL 374186 (July 2, 1996).[4]

Plaintiff did not challenge the ALJ's reliance on this factor, and in this case there does not appear to be "medical evidence that [Plaintiff's] resistance [to] treatment was attributable to her mental impairment rather than her own personal preference, and it was reasonable for the ALJ to conclude that the 'level or frequency of treatment was inconsistent with the level of complaints.'" *Molina*, 674 F.3d at 1114 (quoting SSR 96-7p).

Finally, the ALJ explained that Plaintiff's treating physicians consistently observed and noted that Plaintiff "appeared in no acute distress" during her visits. (Doc. 10-3 at 32). Plaintiff objects, asserting that evidence of "some improvement with treatment does not mean that an individual is not disabled." (Doc. 11 at 24). Plaintiff is correct in her observation. Nonetheless, the ALJ did not base her finding of non-disability on the lack of "acute distress" while visiting with treating physicians. Rather, the ALJ relied on the discrepancy between Plaintiff's testimony and the record before her as one of several factors in finding Plaintiff "not entirely credible." As the ALJ explained, a "healthy and comfortable appearance demonstrated by [Plaintiff] is in sharp contrast" to allegations of disability. (Doc. 10-3 at 32). But even assuming the persuasiveness of Plaintiff's objection, this does not constitute harmful error given the ALJ's reliance on several other permissible factors in discounting Plaintiff's testimony, each of which is supported by substantial evidence.

### 3.    Conclusion

---

[4]  SSRs "do not carry the 'force of law,' but they are binding on ALJs nonetheless." *Bray*, 554 F.3d at 1224. The Rulings "'reflect the official interpretation of the [Social Security Administration] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations.'" *Id.* (quoting *Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006)).

Based on the foregoing, the ALJ's negative credibility finding was a reasonable interpretation of the evidence. The ALJ set forth specific, clear, and convincing reasons supported by substantial evidence to explain her credibility evaluation pursuant to factors deemed appropriate by the Ninth Circuit. Consequently, "it is not [the Court's] role to second-guess it." *Rollins*, 261 F.3d at 857 (citing *Fair*, 885 F.2d at 604).

**B.    Whether the ALJ Properly Weighed Medical Evidence**

The Court next addresses Plaintiff's argument that the ALJ failed to properly weigh the medical evidence before her. (Doc. 10-3 at 15). Specifically, Plaintiff asserts that the ALJ committed harmful error by giving "little weight" to the opinions of her treating physician Dr. Scott, as well as those from Nurse Practitioner Hahn, and giving no weight to examining physician Dr. Tromp's opinion. (*Id.* at 16-20).

The Ninth Circuit distinguishes between the opinions of three types of physicians: (1) those who treat the claimant ("treating physicians"); (2) those who examine but do not treat the claimant ("examining physicians"); and (3) those who neither examine nor treat the claimant ("non-examining physicians"). *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). As a general rule, the opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician, but less than a treating physician. *Gallant*, 753 F.2d at 1454.

**1.    Nurse Practitioner Hahn**

Plaintiff asserts that the ALJ committed harmful error by giving "little" weight to the opinion of Nurse Practitioner Judith Hahn, who opined that Plaintiff "struggle[d] with simple decision making, has severe anxiety and difficulty in social settings, is unable to multitask, and is therefore unable to seek or sustain employment." (Doc. 10-3 at 38). Ms. Hahn is not considered an "acceptable medical source" as defined by the applicable

regulations.[5] 20 C.F.R. § 404.1512; 20 C.F.R. § 404.1527 (a)(2). The ALJ "may discount testimony from [non-medically acceptable treating sources] if the ALJ gives reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111 (internal quotation marks omitted) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). The Ninth Circuit has not defined "germane" in the context of rejecting the opinion from an "other source," but BLACK'S LAW DICTIONARY defines it as "[r]elevant; pertinent." 695 (7th ed. 1999).

The ALJ discounted Ms. Hahn's opinion for the following reasons: (1) it was "generally without support from treatment notes"; (2) she relied on Plaintiff's subjective complaints; and (3) her opinions were inconsistent with Plaintiff's course of treatment. (Doc. 10-3 at 38). All of these are germane to Ms. Hahn's opinion and acceptable reasons for rejecting her opinion. *See Baylis v. Barnhard*, 427 F.3d 1211, 1218 (9th Cir. 2005) (noting that "[i]nconsistency with medical evidence is one such [germane] reason"); *Morris v. Astrue*, No. CV-11-0696-PHX-JAT, 2012 U.S. Dist. LEXIS 98145, at *24 (D. Ariz. July 16, 2012) (finding that conflicting reports "from an examining and non-examining physician" constituted a germane reason for discounting a nurse practitioner's opinion).

### 2.   Dr. Scott

The opinion of a treating physician is entitled to controlling weight when it is "well supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527 (d)(2); *see also Orn*, 495 F.3d at 631. But if a treating physician's opinion "is not well-supported" or "is inconsistent with other substantial evidence in the

---

[5] Plaintiff does not argue that Ms. Hahn fits the definition of a medically acceptable source. *See Molina*, 674 F.3d at 1111 (citing *Comez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996)) (recognizing that that a "nurse practitioner could be considered a medically acceptable source where she worked under a physician's close supervision such that she acted as the physician's agent").

record," then it should not be given controlling weight." *Orn*, 495 F.3d at 631.

Substantial evidence that contradicts a treating physician's opinion may consist of either (1) an examining physician's opinion or (2) a non-examining physician's opinion combined with other evidence. *Lester*, 81 F.3d at 830-31.

In the case of an examining physician, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not substantial evidence." *Orn*, 495 F.3d at 632 (citing *Murray v. Heckler*, 722 F.2d 499, 501-02 (9th Cir. 1984)). To constitute substantial evidence, the examining physician must provide "independent clinical findings that differ from the findings of the treating physician." *Id.* (citing *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985)). Independent clinical findings can be either "diagnoses that differ from those offered by another physician and that are supported by substantial evidence . . . or findings based on objective medical tests that the treating physician has not herself considered." *Id.* (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)); *Andrews*, 53 F.3d at 1041.

The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831. Such an opinion is only substantial evidence if supported by "substantial record evidence." *Id.*

If a treating physician's opinion is not contradicted by the opinion of another physician, then the ALJ may discount the treating physician's opinion only for "clear and convincing" reasons. *Carmickle*, 533 F.3d at 1164 (quoting *Lester*, 81 F.3d at 830). If the ALJ determines that a treating physician's opinion is inconsistent with substantial evidence and is not to be given controlling weight, the opinion remains entitled to deference and should be weighed according to the factors provided in 20 C.F.R. § 404.1527(c). *Orn*, 495 F.3d at 631. These factors include (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by relevant medical

evidence; (4) the opinion's consistency with the record as a whole; and (5) whether the physician is a specialist giving an opinion within his specialty. 20 C.F.R. § 404.1527(c). But the ALJ may still reject a contradicted treating physician's opinion for "specific and legitimate reasons that are supported by substantial evidence in the record." *Carmickle*, 533 F.3d at 1164 (quoting *Lester*, 81 F.3d at 830); *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

Finally, "[a]lthough a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). This is because the determination as to whether a claimant is disabled is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1). Thus, even if a treating physician's opinion is controlling, it does not necessarily lead to a finding of disability. *See Magallanes*, 881 F.2d 747, 753 (rejecting a treating physician's opinion of disability).

Dr. Scott opined "on multiple occasions" that Plaintiff is "unable to sustain full time employment on a regular and continuous basis" and has a "chronic disabling low back condition." (Doc. 10-3 at 36). The ALJ explained that she gave Dr. Scott's opinion "little weight" in her decision, (*id.* at 37), and that she gave "great weight" to the opinion of Monte Jones, M.D., (*id.* at 34), and Dr. Jasinksi.[6] (*Id.* at 35). Dr. Jones is an examining physician that met with Plaintiff in September 2012 "for a consultative examination at the request of the State agency." (*Id.* at 34). After examining Plaintiff, Dr. Jones "diagnosed

---

[6] Dr. Jasinksi is a psychologist, and opined that when considering Plaintiff's mental conditions, she could perform simple, repetitive, tasks in low stress situations requiring minimal interaction with others. (Tr. 84-88, 1061). When cross-examined at the supplemental hearing, Dr. Jasinksi reiterated that he was "focused primarily on the mental health issues and the case did not include, in [his] assessment, the [e]ffects of the physical limitations." (*Id.* at 86). Dr. Jasinksi's contradictory opinion is thus limited to Plaintiff's alleged mental impairment. It cannot be relied upon to act as a contradictory opinion to treating physician Dr. Scott's opinion that Plaintiff was physically disabled.

back pain, history of lumbar spine surgery, and depression" and further noted that Plaintiff's "[r]ange of motion of the spine was within normal limits" and that she could "perform less than the full range of light exertion." (*Id.*). To constitute substantial evidence in contradiction of Dr. Scott's opinion, it must rest on independent clinical findings, i.e., "diagnoses that differ" from others offered that are supported by substantial evidence, or previously unconsidered findings based on objective medical tests. *Orn*, 495 F.3d at 632.

Plaintiff argues that while Dr. Jones may have offered a differing opinion with respect to her physical limitations, he relied on "similar findings and diagnoses to the treating doctor," and thus his opinion does not rest on independent clinical findings. (Doc. 11 at 18). Here, Dr. Jones diagnosed Plaintiff with (1) back pain, (2) a history of lumbar spine surgery, and (3) depression. (Tr. at 864-65). Dr. Scott, at one point, diagnosed Plaintiff with "chronic disabling low back condition affecting the lumbar discs." (*Id.* at 858). Plaintiff fails to establish how Dr. Jones' diagnosis with respect to Plaintiff's lower back condition rested on similar findings to Dr. Scott. And based on Plaintiff's daily activities, the conservative treatment pursued, the evidence gathered during Dr. Jones' examination, and objective medical evidence of Plaintiff's symptoms— all contained in the record—the Court finds that Dr. Jones' diagnosis is supported by substantial evidence in the record and constitutes an independent clinical finding.

The Commissioner further notes in her brief that non-examining physicians Mary McLarnon, M.D., and Michael Keer, D.O., opined that Plaintiff could perform light work. (Doc. 16 at 12). Examining physician Dr. Binette also opined that Plaintiff had no physical conditions "that would impose any limitations for 12 continuous months." (Tr. 33, 594). The ALJ afforded Dr. Binette's opinion "minimal weight" despite the fact that his examination was "probative and persuasive, as it supports the conclusion reached" in the decision. (Doc. 10-3 at 34). The ALJ's decision also did not specifically reference the opinions offered by Dr. McLarnon and Dr. Keer, although the decision did note that the opinions of unnamed non-examining physicians "do deserve some weight, particularly in

a case like this in which there exist a number of other reasons to reach similar conclusions." (*Id.* at 36). The Ninth Circuit has mandated that for a non-examining physician's opinion to itself constitute substantial evidence that justifies rejecting the opinion of a treating physician, it must be supported by "other evidence." *Lester*, 81 F.3d at 830-31.

Here, the ALJ noted that the non-treating physicians had the opportunity to "review the medical record in its entirety, up to that point," and pointed to evidence that Plaintiff's "care following surgery was conservative and objective findings were quite minimal," as well as objective evidence that Plaintiff could undertake "work with the limitations noted herein." (Doc. 10-3 at 36). With respect to Dr. Binette, an examining physician, the ALJ explained that after examination, Plaintiff had "no muscle spasms, tenderness, crepitus, effusions, or deformities present," that her "[l]umbar range of motion was slightly diminished," her use of a walker was not medically prescribed and not medically necessary, that her "gait was normal although slow" and ultimately that there were "no conditions that would impose any limitations for [twelve] continuous months." (*Id.* at 34). Although the ALJ made minimal reference to the non-examining physicians, and afforded Dr. Binette's opinion "minimal weight," having reviewed the ALJ's decision, the Court finds that—taken together with Dr. Jones' opinion—these four opinions constitute substantial evidence offered in contradiction to Dr. Scott's opinion that Plaintiff's physical impairment rendered her disabled.

While the Court has found that the record contains substantial evidence contradicting to the treating physician's opinion, it is still entitled to deference. Under Ninth Circuit case law, where the treating physician's opinion is no longer controlling, the ALJ may reject it only where she finds "specific and legitimate reasons that are supported by substantial evidence in the record." *Carmickle*, 533 F.3d at 1164 (citation omitted). The ALJ gave three reasons in support of her decision to give "little weight" to Dr. Scott's opinion: (1) his opinions were given at the request of an insurance company; (2) he "relied quite heavily on the subjective report of symptoms and limitations provided

by [Plaintiff]"; and (3) Dr. Scott's course of treatment was not "consistent" with a disabling injury. (Doc. 10-3 at 36). Each will be addressed in turn.

At the outset of the inquiry, the Court notes that it does not find the fact that Dr. Scott was assigned to Plaintiff through her worker's compensation claim to be a specific and legitimate rationale. Turning to the ALJ's finding that Dr. Scott's opinion was premised on the subjective claims of Plaintiff, the ALJ's decision does not set forth what record evidence she relied on to support her finding. The record contains a number of "progress reports" and treatment notes from Dr. Scott that speak heavily to severe pain reported by Plaintiff, but also of diagnoses rendered after subjecting Plaintiff to medical tests. Thus, although the record supports both the ALJ's finding and that Dr. Scott based his opinion on objective diagnoses and medical evidence, the ALJ's interpretation is reasonable, is supported by substantial evidence, and is entitled to deference.

Where a treating physician's opinion is based "to a large extent" on "an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim*, 763 F.at 1162 (quoting *Tommasetti*, 533 F.2d at 1041). The Court cannot say that Dr. Scott's opinion is less "heavily based on [the] patient's self-reports than on clinical observations." *Id.* (citation omitted). The ALJ is responsible for resolving conflicts in medical testimony and resolving ambiguities, *Andrews*, 53 F.3d at 1039, and where there is sufficient evidence to support the ALJ's decision, this Court may not substitute its own determination. *Young*, 911 F.2d at 184.

Additionally, the Ninth Circuit has noted that the ALJ may reject a treating provider's opinion where there is a conflict between the claimant's ability to undertake daily activities and the treating provider's medical opinion. Here, the Court has found that the ALJ did not err in discounting Plaintiff's credibility, in part, on the basis of Plaintiff's ability to carry out numerous tasks that were transferable to a work setting. *See Molina*, 674 F.3d at 1113 (citation omitted). It is evident that there is a conflict between Dr. Scott's opinion that Plaintiff is disabled and evidence of Plaintiff's ability to

1   undertake a wide range of activities. This serves as additional record evidence supporting

2   the ALJ's decision to discount Dr. Scott's opinion.

3       Finally, the ALJ cited to evidence showing that Dr. Scott's course of treatment

4   was not consistent with a disabling injury. The record establishes that while Dr. Scott did

5   recommend surgery for Plaintiff, in light of her inability to improve physically, Dr. Scott

6   recommended epidural injections and opioid treatment for the symptoms. The record

7   does not contain evidence suggesting that Dr. Scott recommended physical theory,

8   chiropractic treatment, or other courses of action to improve physically or recover from

9   the injury. The Court finds that the ALJ's reliance on this factor is "supported by

10  inferences reasonably drawn from the record." *Molina*, 674 F.3d at 1111 (citing

11  *Tommasetti*, 533 F.3d at 1038); *Rollins*, 261 F.3d at 857.

12      In light of the aforementioned, the ALJ's decision to give Dr. Scott's opinion that

13  Plaintiff is physically disabled "little weight" is premised on "specific and legitimate

14  reasons that are supported by substantial evidence." *Carmickle*, 533 F.3d at 1164 (citation

15  omitted); *see also Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988 (citing *Cotton v.

16  Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)) ("The ALJ can meet this burden [to reject

17  the controverted opinion of a treating physician] by setting out a detailed and thorough

18  summary of the facts and conflicting clinical evidence, stating his interpretation thereof,

19  and making findings."). The ALJ did not err in affording Dr. Scott's opinion little weight.

20

21          **3.      Dr. Tromp**

22      Plaintiff next contends that the ALJ erred in giving "little weight" to the opinion

23  offered by examining physician Dr. Shannon Tromp on Plaintiff's mental impairment.

24  The Commissioner concedes that it was error for the ALJ to discount Dr. Tromp's

25  opinion "because it was performed at the request of Plaintiff's counsel," but argues that

26  the error was harmless. (Doc. 16 at 16 n.2).

27      In determining whether an ALJ's error is harmless, courts are "to apply the same

28  kind of harmless-error rule that courts ordinarily apply in civil cases." *Molina*, 674 F.3d

at 1119 (citation omitted). The reviewing court must "give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." *Id.* (quoting *Sanders*, 556 U.S. at 407, Title 28 U.S. § 2111). Error warrants reversal where it "more probably than not tainted the verdict," taking into consideration "whether the evidence at issue was cumulative of other competent testimony," and "the overall strength of the case against the appealing party." *Id.* (internal quotation marks and citations omitted).

Specific to social security disability actions the Court must analyze the error "in light of the circumstances of the case." *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). "[E]rrors are harmless if they are 'inconsequential to the ultimate nondisability determination," and the Court may not "set aside the denial of a disability claim unless 'the [Commissioner's] findings are not supported by evidence *in the record as a whole*." *Molina*, 674 F.3d at 1121 (quoting *Carmickle*, 533 F.3d at 1162, *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir. 1985) (emphasis in original)).

Even assuming that Dr. Jasinksi's opinion constituted substantial evidence contradicting Dr. Tromp's conclusion that Plaintiff's mental impairment was disabling, the ALJ may only reject Dr. Tromp's opinion for specific and legitimate reasons supported by substantial evidence. Here, the ALJ rejected Dr. Tromp's opinion for three reasons: (1) it was "uncorroborated by the medical evidence of record; (2) it "appear[ed]" to be "based on the claimant's subjective complaints regarding her pain"; and (3) the examination was conducted "through attorney referral and in connection with an effort to generate evidence for the current appeal." (Doc. 10-3 at 35). The ultimate inquiry for the Court is to determine whether the ALJ's reliance on the third factor was "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1121 (citation omitted). Having reviewed the ALJ's decision, the Court cannot say that it was.

The ALJ may question a doctor's credibility on the grounds that it was solicited by counsel, but may not rely on those facts as the sole basis for rejecting the opinion. *Saelee v. Chater*, 94 F.3d 520, 522-23 (9th Cir. 1996). Discrediting a treating physician's

opinion due to inconsistency with the medical record and over-reliance on a claimant's subjective self-reports are both specific and legitimate reasons. *Ghanim*, 763 F.3d at 1162; 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). The ALJ's reliance on Plaintiff's subjective complaints forming the basis of Dr. Tromp's opinion is undercut by the presence of the qualifier "appears" coupled with a cursory analysis citing to evidence to support the ALJ's finding. With respect to the ALJ's explanation that Dr. Tromp's opinion was "uncorroborated by the medical evidence of record," the Court finds that it is supported by substantial evidence. The ALJ cited to the fact that Plaintiff appeared with "good eye contact, hygiene, and grooming," that Plaintiff had "good comprehension and memory, logical and goal directed thought process, and [was] socially appropriate." (Doc. 10-3 at 35). Moreover, Plaintiff achieved a perfect score on the "mini mental status exam" carried out by Dr. Tromp, and Dr. Tromp noted "no specific work limitations" that Plaintiff would be restricted under." (*Id.*). Thus, Dr. Tromp's opinion that Plaintiff cannot "handle even low stress" was not supported by medical evidence.

But the ALJ's explanation focused heavily on the context of Dr. Tromp's examination of Plaintiff. The ALJ explained, and explicitly "emphasized" that Plaintiff "underwent this examination that formed the basis of the opinion in question not in an attempt to seek treatment for symptoms, but rather through attorney referral and in connection with an effort to generate evidence for the current appeal." (Doc. 10-3 at 35). The ALJ further explained that "Dr. Tromp was presumably paid for this report," and then explicitly acknowledged that while "such evidence is certainly legitimate and deserve[s] due consideration," because of "the context in which it was produced," which "cannot be entirely ignored . . . [n]o weight is given to [Dr. Tromp's] opinions." (*Id.*). The ALJ's focus on the "context" in which Dr. Tromp's opinion was generated, coupled with her decision to "emphasize[]" the reliance on this factor, make clear that the ALJ's decision to discount the opinion was substantially dependent upon the fact that the examination was arranged "through attorney referral." Thus, although the ALJ offered a specific and legitimate reason supported by substantial evidence in the record to support

her decision to discount Dr. Tromp's opinion, the reliance on "attorney referral" permeates the finding to such a degree that the Court finds that it constitutes the sole basis for rejecting Dr. Tromp's opinion, which is impermissible.

Given that Dr. Tromp opined that Plaintiff would miss "more than [three] days per month" of work and was an examining physician for psychological symptoms, the Court cannot say that the ALJ's error is inconsequential with respect to a finding of disability. The Court does not suggest that specific and legitimate reasons do not exist in the record that would permit the ALJ to ultimately reject Dr. Tromp's opinion. But the ALJ's decision is overly reliant on an erroneous factor that clearly influenced the finding that the at-issue opinion be given "[n]o weight." (Doc. 10-3 at 35).

Finally, Plaintiff argues that the ALJ committed reversible error due to the fact that she credited some portions of Dr. Jasinksi's testimony, while discounting others, requiring reversal under Ninth Circuit case law. *See Craig v. Astrue*, 269 Fed. Appx. 710, 712 (9th Cir. 2008) (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004)). Specifically, Plaintiff contends that the ALJ accepted all of Dr. Jasinksi's opinion, but for the portion of his testimony concurring that Plaintiff would miss three or more days of work a month due to her injury, which would preclude her from being an active participant in the labor force. (Doc. 11 at 17-25). Dr. Jasinksi testified that he had "no reason to disagree with" the assessments of Plaintiff's "treating providers" who all "noted that [Plaintiff] would have absences of three or more per month." (Tr. at 87-88). But examining the context of Dr. Jasinksi's remark, it is apparent that he was considering Plaintiff's alleged physical limitations and her psychological limitations. Additionally, counsel presented Dr. Jasinksi with the opinions of Plaintiff's treating physicians for both her physical and mental conditions.

Based on the small portion of the testimony that Dr. Jasinksi's concurrence accounts for, and having examined the overall context in which it was made, the Court finds that insufficient evidence exists to conclude that the ALJ committed reversible error by accepting one portion of Dr. Jasinksi's opinion while rejecting others. Plaintiff does

1  not object to the remainder of his opinion, or the ALJ's reliance on it.

2

3  **C.      Remand**

4          Having found that the ALJ committed harmful error, the Court has discretion to

5  remand the case for further development of the record or for an award of benefits.

6  *Reddick*, 157 F.3d at 728. Even assuming that the three elements of the Ninth Circuit's

7  "credit-as-true rule" are satisfied, *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Circuit

8  2014), the doctrine "envisions 'some flexibility.'" *Id.* (quoting *Connett v. Barnhart*, 340

9  F.3d 871, 876 (9th Cir. 1020)). The Ninth Circuit has explained that this flexibility "is

10  properly understood as requiring courts to remand for further proceedings when . . . an

11  evaluation of the record as a whole creates serious doubt that a claimant is, in fact,

12  disabled." *Id.*

13          Considering "whether the record as a whole is free from conflicts, ambiguities, or

14  gaps, whether all factual issues have been resolved, and whether the claimant's

15  entitlement to benefits is clear under the applicable legal rules," the Court finds that

16  "further administrative proceedings would be useful." *Treichler v. Comm'r of Soc. Sec.*,

17  775 F.3d 1090, 1103-04 (9th Cir. 2014) (citation omitted). Thus, a remand for further

18  proceedings is appropriate in this case.

19

20                          **IV.     Conclusion**

21          For the reasons stated above,

22  /

23  /

24  /

25  /

26  /

27  /

28  /

**IT IS ORDERED** that the Commissioner's decision denying benefits is **REVERSED**, and the case is **REMANDED** for further proceedings. The Clerk of the Court shall enter judgment accordingly and terminate this case.

Dated this 8th day of August, 2016.

James A. Teilborg
Senior United States District Judge